**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEFFRY S. PEARSON, et al. | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| MARK W. TANNER, et al., | : | |
| | : | NO. 12-798 |
| Defendants. | : | |

**M E M O R A N D U M**

**GENE E.K. PRATTER, J.,**                                        **APRIL 23, 2012**

I.      **INTRODUCTION**

Ex-lawyer Allen J. Feingold and suspended attorney Jeffry S. Pearson filed a complaint seeking a declaratory judgment against Mark Tanner, Theresa Allen, Jerry Allen, and the law firm of Feldman, Shepherd, Wohgelhertner, Tanner, Weinstock & Dodig, LLP by which Messrs. Feingold and Pearson ask the Court to declare that they are entitled to recover the reasonable value of attorney's fees in *quantum meruit* in connection with their former legal representation of Mr. and Mrs. Allen on a contingency fee basis in a medical malpractice case. The defendants filed a motion to dismiss (Doc. No. 2) pursuant to Rules 12(b)(1) and 12(b)(6). For the reasons that follow, the Court grants the motion.

1

## II.      FACTUAL BACKGROUND[1]

Theresa and Jerry Allen retained the services of Allen J. Feingold in 2003 to represent them in connection with a medical malpractice case arising from complications sustained by Mrs. Allen following a sinus surgery.  Compl. at 9.  Mr. and Mrs. Allen entered into a written fee agreement with Mr. Feingold which provided that Mr. Feingold would receive a contingency fee from the amount of any recovery obtained by Mr. Feingold on their behalf.  Id. at 10.

After prosecuting various aspects of the litigation, in 2007, with Mr. and Mrs. Allen's consent, Mr. Feingold "associated with and transferred responsibility" for the Allens' litigation to Jeffry S. Pearson.  Id. at 12.  Plaintiffs allege that Mr. Pearson and the Allens agreed that the original contingency fee agreement entered into with Mr. Feingold would govern the payment of attorney's fees.  Id. at 13.  Mr. Pearson oversaw the litigation until June of 2009, at which point, again with the consent of Mr. and Mrs. Allen, he "associated with and transferred responsibility" for the case to Theodore Schwartz, Esquire.  Id. at 15.  Mr. and Mrs. Allen once again agreed that the original contingency fee agreement would continue to govern the payment of attorney's fees. Id. at 16.

Then, in October 2009, after discharging Mr. Schwartz allegedly without cause, Mr. and Mrs. Allen retained Mark Tanner and the law firm of Feldman, Shepherd, Wohgelhertner, Tanner, Weinstock & Dodig, LLP to continue prosecuting their medical malpractice claim.  Id. at 17. Messrs. Feingold and Pearson allege that Mr. Tanner has refused to protect their claims for fees and for recovery of costs incurred on Mr. and Mrs. Allen's behalf.  The plaintiffs filed this

---

[1] Unless otherwise stated, these facts are drawn from the Complaint and are accepted as true for the purposes of this motion.

action to protect their purported interest in any contingent fee the Allens may be awarded at the conclusion of their case.[2]

The defendants promptly filed a motion to dismiss Messrs. Feingold and Pearson's Complaint.  They attach as Exhibit A to their motion Mr. Feingold's Disciplinary History before The Disciplinary Board of the Supreme Court of Pennsylvania.  See Def. Ex. A.[3]  This document makes clear that Mr. Feingold has been suspended from the practice of law since March 3, 2006, and has been disbarred since August 22, 2008.  See id.  Indeed, reported case law confirms Mr. Feingold's disbarment, in part, due to his unauthorized practice of law.  See Feingold v. Office of Disciplinary Counsel, 415 F. App'x 429, 430 (3d Cir. 2011).  Likewise, the Defendants attached as Exhibit C to their motion Mr. Pearson's Disciplinary History before The Disciplinary Board.  See Def. Ex. C.   This document explains that Mr. Pearson was suspended from the practice of law for four months effective May 28, 2009.  In addition, on June 28, 2011, Mr. Pearson was suspended for 20 months for assisting Mr. Feingold, among others, with the unauthorized practice of law.[4]  See Def. Exs. C, D.

## III.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.

---

[2] The Allens' medical malpractice case remains extant.

[3] See text at pages 4-5 infra regarding the Court's consideration of this information.

[4] Glaringly absent from the plaintiffs' complaint is any mention of their respective disciplinary histories or Mr. Feingold's disbarment.  Suffice it to say, those histories help explain why Mr. Feingold "associated with and transferred" Mr. and Mrs. Allen's case to Mr. Pearson "sometime in 2007," and why Mr. Pearson "associated with and transferred" the case to Mr. Schwartz in June 2009.

R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553-55 (2007) (quoting Conley, 355 U.S. at 47), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (citations omitted). To survive a motion to dismiss, a civil complaint must allege "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (confirming that Twombly applies to all civil cases).

While, indeed, the Court "must only consider those facts alleged in the complaint and accept all of those allegations as true," ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"), the Court need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

Additionally, and particularly pertinent in this case, the Court may also consider exhibits attached to the complaint, matters of public record, and records of which the Court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). "[P]ublic record, for purposes of what properly may be considered on a motion to dismiss . . . include[s]

4

criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies." Pension Benefit, 998 F.2d at 1196 (citations omitted); see also Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007).  Reported case law and other docketed judicial opinions likewise meet the same criteria.

## IV.   DISCUSSION

### A.   Availability of Recovery Against Mr. Tanner and His Law Firm

Defendants argue that an attorney who initially represents a client but who is later discharged, does not have a *quantum meruit* action against a successor attorney representing the same client.  See Mager v. Bultena, 797 A.2d 948, 955 (Pa. Super. Ct. 2002) (quoting Fowkes v. Shoemaker, 661 A.2d 877, 879 (Pa. Super. Ct. 1995)).  Instead, the dismissed attorneys may only claim in *quantum meruit* against their former clients.  Id.  Accordingly, the defendants argue that the claims against Mr. Tanner and his law firm must be dismissed as a matter of law.

In response, Messrs. Feingold and Pearson direct the Court to Feingold v. Pucello, 654 A.2d 1093 (Pa. Super. Ct. 1995), and Johnson v. Stein, 385 A.2d 514 (Pa. Super. Ct. 1978), in support of their claim that they may bring an action in *quantum meruit* against successor counsel. In Johnson, an attorney filed an action against a former colleague seeking a charging lien for work he had performed while the two attorneys were affiliated at the same law firm.  385 A.2d at 515.  After the Superior Court affirmed the trial court's ruling that the first attorney was not entitled to a charging lien, in what the Superior Court has subsequently repudiated as "pure dicta" and "gratuitous speculation," Styer v. Hugo, 619 A.2d 347, 351 (Pa. Super. Ct. 1993), aff'd, 637 A.2d 276 (Pa. 1994), the Court suggested that the first attorney may be able to pursue an action asserting unjust enrichment against the other attorney.  Johnson, 385 A.2d at 515.

The Feingold case merely piles more *dicta* on top of the Johnson case's *dicta*.  654 A.2d at 1095.  There, Mr. Feingold, then a licensed attorney, sued a former client for attorney's fees in *quantum meruit* after his client discharged him prior to the end of a case.  Id.  The Superior Court affirmed the dismissal of Mr. Feingold's claim against his former client but, citing only Johnson, and offering no analysis whatsoever, suggested that "[Mr.] Feingold's claim would more properly lie against [his client's new] attorney."  Id.

Since the Superior Court decided the Feingold case, it has twice repudiated the *dicta* in Johnson, and suggested that the language in Johnson is limited only to situations where the dispute is between an employer-attorney and a former employee-attorney who, upon termination of his employment, takes his former employer's client.  Mager, 797 A.2d at 955; Fowkes, 661 A.2d at 880; see also In re LaBrum & Doak, LLP, 225 B.R. 93, 105-106 (Bkrtcy. E.D. Pa. 1998) ("Pennsylvania law is clear that a *quantum meruit* cause of action does not lie against an unrelated successor attorney.").  Here, there is no affiliation between either of the plaintiffs and Mr. Tanner or his law firm.  Accordingly, the plaintiffs' claim against Mr. Tanner and his law firm must be dismissed as a matter of law.

### B.  Availability of Recovery Against Mr. and Mrs. Allen

Defendants next argue that the Messrs. Feingold and Pearson fail to state a claim against Mr. and Mrs. Allen upon which relief can be granted because both counsel were discharged for their own wrongful acts.  As noted above, the public records indicate that Mr. Feingold was suspended from practicing law on March 3, 2006, and disbarred on August 22, 2008, while Mr. Pearson was suspended from practicing law on May 28, 2009, and June 28, 2011.  Accordingly, Defendants argue, because Messrs. Feingold and Pearson were discharged due to their

disbarment and/or suspension (i.e., their own wrongful acts), they are not entitled to a percentage of the contingency fee in the event Mr. and Mrs. Allen's lawsuit proves successful.

In support of their position Defendants cite <u>Lampl v. Latkanich</u>, 231 A.2d 890, 894 (Pa. Super. Ct. 1967), the only Pennsylvania appellate court case that arguably addresses this issue. In <u>Lampl</u>, the Superior Court affirmed a jury verdict awarding a discharged lawyer a portion of his contingency fee for legal services rendered prior to his dismissal. <u>Id</u>. Responding to the client's argument that the jury should have been instructed, "that if the jury finds that attorney Lampl was properly discharged, they connot [sic] find for the plaintiff in an amount that is more than he was entitled to under any valid contract," the Court noted that the requested charge stated an erroneous rule of law and was properly refused. <u>Id</u>. at 90-91. The Court continued that "[t]he correct rule appears to be that an attorney is entitled to no compensation whatever, if he is discharged because of his own wrongful acts," but concluded that there was insufficient evidence to substantiate the former client's allegation that the discharged attorney had engaged in any sort of misconduct. <u>Id</u>. at 91 (citing <u>In re Woodworth</u>, 15 F. Supp. 291, 293 (S.D.N.Y. 1936), <u>aff'd</u> 85 F.2d 50 (2d Cir. 1936)). Although the court announced the rule that discharge on the basis of "wrongful acts" is grounds to deny an attorney a percentage of a contingency fee for previously rendered services, the case did not address the specific situation at bar, where an attorney's disbarment led to his termination. That is not to say, however, that the rule announced in <u>Lampl</u> is inapplicable to this case.

Although no Pennsylvania court has spoken directly on whether a disbarred or suspended attorney is entitled to recover a portion of a contingency fee from a former client for services rendered prior to disbarment, courts around the country have adopted one of two approaches. The first approach equates an attorney's disbarment or suspension prior to completion of her retainer

to be equivalent to a material breach, and thus, the lawyer is not entitled to any compensation. See, e.g., Royden v. Ardoin, 331 S.W.2d 206, 209 (Tex. 1960) ("Where the attorney, prior to the completion of his contingent fee contract is disbarred or suspended, he is not entitled to collect either on the contract or *quantum meruit* for his services, if any, that have been rendered."); Fletcher v. Krise, 120 F.2d 809, 810 (D.C. Cir. 1941) ("[A]ppellant's disbarment deprived him of any right to compensation either under his contract or on a *quantum meruit* [basis]"); Woodworth, 15 F. Supp. at 293 ("Reasonable compensation in lieu of the fee he cannot have, because his inability to complete his contract has been brought about by his own wrongful conduct. The rule permitting recovery for reasonable value of services performed is based on quasi contract . . . and is confined to instances where the attorney has been prevented from earning the agreed contingent fee without fault, as by illness, death, or discharge without fair cause. . . . [T]he rule of reasonable compensation does not apply where the attorney is forced to relinquish the suit by reason of disbarment. His inability to perform his contract is the consequence of his own wrong."). This approach is consistent with the Superior Court's ruling in Lampl because it treats a lawyer's disbarment or suspension as a "wrongful act" under the Lampl rubric.

The second line of cases permits *quantum meruit* recovery for services rendered pursuant to a contingency fee arrangement prior to disbarment where the attorney discipline was unrelated to the particular matter for which recovery was sought. See Eisenberg v. Gen. Motors Acceptance Corp., 761 F. Supp. 20, 22 (E.D. Pa. 1991) (Buckwalter, J.) ("[T]here is no sound reason in law or morals for permitting the defendant to use the plaintiff's disbarment as an escape from paying him for services rendered.") (quoting Stein v. Shaw, 79 A.2d 310, 311 (N.J. 1951) ("To deprive an attorney of his claim for any and all compensation for services rendered prior to

his disbarment when the services are not involved in the unprofessional conduct occasioning disciplinary action, would be inequitable.")); see also In re Mekler, 672 A.2d 23, 24 (Del. 1995). These cases permit a disbarred or suspended attorney to recover contingency fees from former clients ostensibly out of a concern that a contrary rule would unjustly enrich former clients at the expense of the disbarred attorney.

The Court does not share our sister courts' concern regarding unjustly enriching clients at the expense of their disbarred or suspended former attorneys. The courts that have permitted attorneys to recover fees for partial performance prior to their disbarment or suspension have gone to great pains to distinguish disbarment from a breach of contract between the attorney and client. As one court noted, "disbarment or disciplinary resignation automatically terminates the attorney client relationship by operation of law" whereas a voluntary abandonment on the part of the attorney constitutes a material breach of a retainer agreement. Eisenberg, 761 F. Supp. at 23. This distinction seemingly equates an attorney's disbarment with an event beyond his or her control, and implicitly likens it to an event triggering the doctrine of impossibility, or in Pennsylvania, "frustration of contractual purpose." See Alvino v. Carracio, 162 A.2d 358, 361 (Pa. 1960). Based on this rationale, even though the disbarred attorney is unable to fulfill her contractual obligations to her client, the attorney's disbarment constitutes an excuse for performance, which would entitle the disbarred attorney to compensation for her pre-disbarment partial performance. See West v. Peoples First Nat. Bank & Trust Co., 106 A.2d 427, 433 (Pa. 1954) ("[W]here the party excused by impossibility has partly performed the contract on his side before the impossibility arises, . . . justice requires the imposition of a quasi-contractual obligation on the party receiving such performance to pay its fair value.") (quoting 6 Williston on Contracts, § 1972 (Rev. Ed.)).

9

One flaw with this line of reasoning, in this Court's consideration, is that an attorney's disbarment or suspension is not, in fact, an event beyond his or her control.[2]   In order for "frustration of contractual purpose" to apply in the first instance, the event preventing performance cannot be the fault of one of the parties, particularly the party seeking compensation for partial performance.  Lichtenfels v. Bridgeview Coal Co., 531 A.2d 22, 26 (Pa. Super. Ct. 1987) ("When people enter into a contract which is dependent for the possibility of its performance on the continual availability of a specific thing, and that availability comes to an end *by reason of circumstances beyond the control of the parties,* the contract is prima facie regarded as dissolved.") (emphasis added); Rest. (2d) Contracts § 261 cmt. d (1981) (explaining that where the frustrating event is the fault of a party that has partially performed, recovery in *quantum meruit* is unavailable, and the frustrating event merely constitutes a breach on the part of the party at fault); see generally Joseph M. Perillo, Symposium, *The Law of Lawyers' Contracts is Different*, 67 FORDHAM L. REV. 443, 448-449 (1998).

Here, it is indisputable that the suspensions and/or disbarments of the Messrs. Feingold and Pearson were the proximate results of their own wrongful conduct.  Therefore, "frustration of contractual purpose" is inapplicable, and the plaintiffs' suspensions and/or disbarments are more akin to a material breach of contract.  Although Mr. and Mrs. Allen (or, successor counsel, for that matter) may have arguably been enriched by the legal services provided by Messrs. Feingold and Pearson (a possibility that would depend in any event on the terms of the engagement between the Allens and current counsel), the Court cannot conclude that such enrichment was unjust in light of their wrongful conduct.  See Lampl, 231 A.2d at 894.  Accordingly, as a matter

---

[2] Perhaps the ultimate decision of the Disciplinary Board is beyond the attorney's "control" (given that one would assume that every respondent attorney would, if possible, "control" the outcome in his or her favor), but the actions of the attorney that placed him or her before the Disciplinary Board in the first place most certainly are within his or her control.

of law Messrs. Feingold and Pearson are not entitled to any contingency fees for their pre-discipline legal services.[3]

### III.      CONCLUSION

For the foregoing reasons, the Court concludes that Messrs. Feingold and Pearson fail to state a claim upon which relief can be granted.  Accordingly, the Court will grant the Defendants' motion to dismiss.

An appropriate order consistent with this Memorandum follows.


BY THE COURT:



S/Gene E.K. Pratter
GENE E. K. PRATTER
United States District Judge

---

[3] Of course this ruling does not in any way affect a disbarred or suspended attorney's ability to pursue attorney's fees earned prior to being disciplined pursuant to a contractually set hourly rate or a contingency fee arrangement in which he has seen the case through to completion.  Likewise, this ruling would not necessarily preclude reimbursement for documented costs actually advanced if and when the key contingency, i.e., a recovery, comes to pass, provided that the contractual terms previously agreed to on that issue so permit.